## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GAME PLAY NETWORK, INC.,

                Plaintiff,

      v.

POTENT SYSTEMS, INC. and
LIEN GAMES RACING LLC,

              Defendants.

C.A. No. 23-323-GBW

---

Phillip A. Rovner, POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; Paul W. Garrity, SHEPPARD MULLIN RICHTER & HAMPTION LLP, New York, New York; Ryan P. Cunningham, Michael J. Hopkins, SHEPPARD MULLIN RICHTER & HAMPTION LLP, San Diego, California.

       *Counsel for Plaintiff*

Benjamin J. Schladweiler, Renée Mosley Delcollo, GREENBERG TRAURIG, LLP, Wilmington, Delaware; Spiro Bereveskos, William A. McKenna, Woodard Emhardt Henry, REEVES & WAGNER LLP, Indianapolis, Indiana.

       *Counsel for Defendants*

## MEMORANDUM OPINION

June 28, 2024
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiff Game Play Network, Inc. ("GPN") alleges that certain products of Defendants Potent Systems, Inc., and Lien Games Racing LLC infringe United States Patent Nos. 8,777,735 ("the '735 patent"), 9,299,218 ("the '218 patent"), 8,992,312 ("the '312 patent"), and 9,070,252 ("the '252 patent"). Defendants move to dismiss GPN's Amended Complaint (D.I. 8) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. D.I. 16 (the "Motion"). Defendants assert that the claims of the patents-in-suit do not claim patent-eligible subject matter under 35 U.S.C. § 101. For the reasons stated below, the Court grants Defendants' Motion.

## I.    BACKGROUND

The '735, '218, and '312 patents (collectively, the "Gambling Patents") largely share a common specification. D.I. 17, Ex. 1. In certain states, some forms of gambling are legal but others are not. For example, in Maine (as in many states), online horse race betting is legal but online slot machines are not legal. *See* 8 ME Rev. Stat. § 275-D (2011); 8 ME Rev. Stat. § 1201 (2011); 17-A ME Rev. Stat. §§ 951-61 (2022). The Gambling Patents provide a system to show a user one form of gambling (typically the kind impermissible in a state, such as a slot machine), while actually wagering a user's bet on another form of gambling (typically the kind permissible in a state, such as horse racing).[1]

---

[1] The patents-in-suit are not explicitly limited to doing so to get around the law and discuss using this technology to make wagering more interactive—more users will do horse-betting if it feels like they are earning their wager through a video game interface. *See* '735 patent at 2:21-48.

Claim 1 of the '735 patent claims:

> A computer implemented method of monetizing an integrated wager and interactive media platform, the method being implemented in a computer system having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the computer system to perform the method, the method comprising:
>
>> processing, by the computer system, **a real-world wager associated with a user**;
>>
>> **determining**, by the computer system, **the outcome of the real-world wager before a user interaction by the user with interactive media**;
>>
>> **revealing**, by the computer system, at least **a portion of the outcome to the user** through the interactive media **based on the user interaction to give the appearance that the user won the revealed portion based on the user interaction**; and
>>
>> **collecting**, by the computer system, **a fee** related to the processing of the wager, use of the interactive media by the user, and/or the reveal of the portion of the outcome.

'735 patent at claim 1 (emphasis added).

The specification of the '735 patent adds more technical detail, describing "account manager instructions," an "unrevealed account" to store a user's winnings on the actual wager (e.g. on the horse race), a "revealed account," which maintains amounts the user has deposited as well as any revealed winnings. '735 patent at 7:47-53, 11:1-3, 11:22-29. "Reveal instructions" are used to determine how and when to reveal portions of the unrevealed account balance, to give the appearance of winning via interaction with the media (e.g. the fake slot machine). *Id.* at 16:60-63, 23:30-33, 42:37-51. For example, when a wager hits the user may receive extra available lives, or the user may receive a deposit of a portion of the unrevealed balance over time to make it appear they are winning the money as a result of their gameplay. *Id.* at 18:55-61, 32:24-40. There are also wager instructions—the actual wagers may be explicitly defined by the user, or automatically initiated (e.g. either a user can pick a horse to bet on, or the computer can

automatically pick horses based on risk profiles). *Id.* at 11:45-62, 12:61-13:44, 14:39-15:42,

16:37-47, 25:4-10, 26:32-27:22, 42:1-13.

>Claim 1 of the '218 patent claims:
>
>>A computer implemented method of updating a user account based on outcomes of wagers placed on behalf of a user and revealing at least portions of the user account through interactive media applications, **wherein the user account is associated, during a user enrollment process, with identifying information**, the method being implemented in a computer system having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the computer system to perform the method, the method comprising:
>>
>>>causing, by the computer system, a wager to be placed on behalf of the user;
>>>
>>>obtaining, by the computer system, an outcome of the wager;
>>>
>>>updating, by the computer system, an account balance associated with the user account based on the outcome;
>>>
>>>obtaining, by the computer system, the identifying information from an interactive media application;
>>>
>>>**identifying**, by the computer system, **the user account based on the identifying information**; and
>>>
>>>**causing**, by the computer system, **an indication of an amount of the account balance to be revealed to be transmitted to the interactive media application**.

'218 patent at claim 1 (emphasis added to reflect claim language not present in the '735 patent).

>Claim 1 of the '312 patent claims:
>
>>A system of providing an integrated wagering and interactive media platform that updates at least a first balance associated with a user based on outcomes of wagers placed on behalf of the user and reveals at least portions of the first balance through remote devices, the system comprising:
>>
>>>a computer system having one or more physical processors programmed by computer program instructions that, when executed by the one or more physical processors, cause the computer system to:
>>>
>>>>cause a wager to be placed on behalf of the user through a real currency wagering system;
>>>>
>>>>obtain an outcome of the wager;

update at least a first balance associated with the user based on the outcome;

determine an amount of the first balance to be potentially revealed to the user;

**generate a reveal specification based on the determined amount, wherein the reveal specification includes a reveal parameter that specifies the determined amount**; and

**cause the reveal specification to be transmitted to a remote device**.

'312 patent at claim 1 (emphasis added). The "reveal specification" includes "a reveal parameter"

that indicates "how to reveal the outcome of the real-world wager," such as time of the reveal,

difficulty of the objective to be completed, and how the reveal occurs. '312 patent at 44:19-32.

The '252 patent is broader than the Gambling Patents, and claims a method of giving an

item to a user after presenting them with media. Specifically, claim 1 of the '252 patent claims:

A computer implemented method of allocating items, to a user account balance associated with a user, that are to be revealed through an interactive media application, the method being implemented in a computer system having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the computer system to perform the method, the method comprising:

identifying, by the computer system, **an item to be revealed to the user**;

allocating, by the computer system, **the item to the user account balance,** wherein the user account balance includes a plurality of items allocated to the user;

selecting, by the computer system, **the item** from among the plurality of items to be revealed to the user;

selecting, by the computer system, **the interactive media application** from among a plurality of interactive media applications **in which to reveal the item based on one or more parameters that specify a manner in which to reveal the item**;

transmitting, by the computer system, **information that specifies a reveal of the item** to the interactive media application;

receiving, by the computer system, back from the interactive media application, **information indicating whether the item was revealed** through the interactive media application; and

> **updating**, by the computer system, **the user account balance based on the information received back** from the interactive media application.

'252 patent at claim 1.  The specification makes clear that "the system may provide reveals that are tied to promotions provided by a partner promotions provider, virtual times (e.g. certain in-game items) that the system is promoting to sell, and/or other item that is not tied to a real-world wager."  '252 patent, 3:5-12.  The dependent claims of the '252 patent largely add back the wagering limitations from the Gambling Patents.

## II.   LEGAL STANDARDS

### a.  Motion to Dismiss

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  But the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'"  *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).  Under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and view those facts in the light most favorable to the plaintiff.  *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

**b. Patent-Eligible Subject Matter**

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). The § 101 inquiry is properly raised at the pleading stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017), *cert. denied*, 138 S. Ct. 2621 (2018); *see also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (stating that patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion"); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (stating that "it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion" (quoting *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016)); *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1379 (Fed. Cir. 2018) (affirming Rule 12(b)(6) dismissal based on § 101 patent ineligibility). This is, however, appropriate "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

Section 101 of the Patent Act defines patent-eligible subject matter. It states, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has held that there are exceptions to § 101. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (internal quotation marks and citation omitted). "[I]n applying the § 101 exception, [the court] must distinguish between patents that claim the 'building blocks' of human ingenuity and those that integrate the building blocks into

6

something more[] thereby 'transforming' them into a patent-eligible invention. The former 'would risk disproportionately tying up the use of the underlying' ideas and are therefore ineligible for patent protection. The latter pose no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id.* at 217 (cleaned up).

The Supreme Court's *Alice* decision established a two-step framework for determining patent eligibility under § 101. In the first step, the court must determine whether the claims at issue are directed to a patent-ineligible concept. *Id.* In other words, are the claims directed to a law of nature, natural phenomenon, or abstract idea? *Id.* If the answer to the question is "no," then the patent is not invalid for teaching ineligible subject matter under § 101. If the answer to the question is "yes," then the court proceeds to step two, where it considers "the elements of each claim both individually and as an ordered combination" to determine if there is an "inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Id.* at 217-18 (alteration in original). "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 221 (internal quotation marks and citation omitted). Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 222 (quoting *Bilski*, 561 U.S. at 610-11). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 223.

## III.   DISCUSSION

### A.   There are No Relevant Claim Construction or Factual Disputes.

GPN asserts that "claim construction may be needed to resolve factual issues." D.I. 21 at 20. However, "[d]ismissal is appropriate when a plaintiff has failed to identify claim terms requiring a construction that could affect the patent-ineligibility analysis." *Recentive Analytics, Inc. v. Fox Corp.*, 692 F. Supp. 3d 438, 448 (D. Del. Sept. 19, 2023) (citing *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017)). GPN has not identified any terms needing construction, not any proposed constructions for those terms. Thus, claim construction disputes do not prevent the Court from reaching the § 101 analysis.

GPN also asserts that there is a factual dispute as to whether "the specifications in the Asserted Patents describe improvements over prior systems that are recited in the Claims." D.I. 21 at 20. The § 101 eligibility inquiry is a matter of law for the Court to determine. *See Bilski*, 561 U.S. at 602. "At the pleading stage, to the extent the § 101 question of law is informed by subsidiary factual issues, those facts are to be construed in the light most favorable to Plaintiff." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, C.A. No. 14-1006-RGA, 2016 WL 4373698, at *3 (D. Del. Aug. 15, 2016), *aff'd*, 874 F.3d 1329 (Fed. Cir. 2017) (citations omitted). The Court does not see any factual dispute—the dispute turns on the legal question of whether the "improvements" are patentable technological improvements or unpatentable business improvements. However, to the extent that there are factual disputes, the Court draws all assumptions in favor of GPN at this stage.

## B.    Patent Office Guidance is Not Binding.

GPN relies in significant part on guidance from the United States Patent and Trademark Office ("USPTO"). Specifically, GPN argues that the motion to dismiss should be denied because (1) "four separate USPTO Examiners found that the Claims recite patent eligible subject matter, even in the wake of *Alice*" and (2) certain subject matter eligibility examples that the USPTO publishes are allegedly similar to the patents-in-suit. D.I. 21 at 6, 13-14.

That the patent examiners found that the patents were subject matter eligible is relevant to the presumption of validity. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (finding that "[t]o the extent the district court" concluded that "issued patents are presumed valid but not presumed patent eligible, it was wrong to do so."). However, the presumption of validity may be overcome, and the patent examiners' decisions are not binding on the Court. *Id.* Patent eligibility is a question of law which the Court must determine. *Bilski*, 561 U.S. at 602.

PTO guidance "is not, itself, the law of patent eligibility, does not carry the force of law, and is not binding on our patent eligibility analysis." *In re Rudy*, 956 F.3d 1379, 1382 (Fed. Cir. 2020). "While we greatly respect the PTO's expertise on all matters relating to patentability, including patent eligibility, we are not bound by its guidance." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1020 (Fed. Cir. 2019). Indeed, courts in this District have previously confronted the PTO's examples and declined to defer to those findings or conclusions. *See, e.g.*, *Citrix Sys., Inc. v. Avi Networks, Inc.*, 363 F. Supp. 3d 511, 516 n.2 (D. Del. 2019) (acknowledging the similarity of the case to a PTO example but coming out the other way).

GPN points to Example 37 and Example 40, promulgated by the PTO, as instructive. While the Court is not required to defer to Examples 37 and 40, nor the PTO's guidance, the Court has closely reviewed these Examples and concludes that they are not persuasive as applied to the patents-in-suit. Example 37 states that a claim directed to a graphical user interface ("GUI") where the "amount of use of each icon" is determined and then "automatically moving the most used icons to a" set position on the GUI is patent eligible because it recites "a specific manner of automatically displaying icons to the user based on usage which provides a specific improvement over prior systems." D.I. 21, Ex. 6 at 2-3. While Example 37, like the patents-in-suit, is directed towards a user interface, Example 37 discusses a technological solution to a technological problem ("traditional software does not automatically organize icons so that the most used icons are located near the 'start' or 'home' icon"), and recites a specific technological improvement over prior technological systems. *Id.* at 1. The patents-in-suit, by contrast, recite a business idea that is implemented by a technological system. *See* Section III.D, *infra*.

Example 40 recites an improved method of network analysis, where the network only collects data when abnormal conditions are detected. D.I. 21, Ex. 6, at 10-11. GPN argues that the patents-in-suit are similar to Example 40, because, like in Example 40, a system tracks data (the unrevealed account balance), and improves a system based on that data. D.I. 21 at 14. GPN reads Example 40 at too high a level of generality. The invention described in Example 40 "avoids excess traffic volume on the network and hindrance of network performance" and otherwise is directed to solving a technological problem in the prior art. D.I. 21, Ex. 6, at 11. It is not patent eligible merely because it collects and analyzes data. Thus, Example 40 does not bear on the analysis in this case.

## C.    Defendants Have Adequately Demonstrated Representativeness.

The parties dispute whether Defendants have properly chosen representative claims. Courts may treat a claim as representative if all the claims are "substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). "Courts may [also] treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative." *Berkheimer v. HP Inc.,* 881 F.3d 1360, 1365 (Fed. Cir. 2018). Courts will find a claim representative if "all of the challenged claims relate to the same abstract idea" and none of the other "claims add one or more inventive concepts that would result in patent eligibility." *Cronos Techs., LLC v. Expedia, Inc.*, C.A. No. 13-1538-LPS, 2015 WL 5234040, at *2 (D. Del. Sept. 8, 2015). Courts have declined to rule on a § 101 motion to dismiss when the accused infringer failed to meet its burden to show that its choice of representative claim is proper. *Id.* at *3-4.

Defendants contend that claim 1 of the '735 patent is representative of the '735 patent, that claim 1 of the '218 patent is representative of the '218 patent, that claims 1 and 3 are representative of the '312 patent, and that claim 1 of the '252 patent is representative of the '252 patent. GPN argues that certain dependent claims add inventive concepts. GPN lists, in quick succession, nearly every dependent claim, and argues that they add the following inventive concepts: (1) how tokens can be used to trigger a wager and represent that a reveal can be made; (2) how the reveal occurs (that it must appear to be a result of user interaction); (3) reveal parameters that control when and where an unrevealed account balance is revealed; (4) separating balances into revealed and unrevealed balances; and (5) caching the reveal so offline

gameplay can occur. D.I. 21 at 16-17. With respect to the Gambling Patents, none of the aforementioned steps adds an inventive concept, or recites a technological improvement to the function of a computer beyond routine and conventional steps. Thus, the claims are "substantially similar," and the Court treats the identified independent claims as representative. With respect to the '252 patent, the thrust of the dependent claims is to add back the limitations present in the Gambling Patents. *See* '252 patent at claims 2- 9. Thus, to the extent that the independent claim is not representative, the patentability of the dependent claims will rise and fall with the patentability of the Gambling Patents.

## D. The Asserted Patents Claim Ineligible Subject Matter.

### i. *Alice* Step 1

"To determine whether a claim is 'directed to' a patent ineligible concept, we evaluate the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355 (Fed. Cir. 2023) (internal quotations omitted). "While the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus." *Charge-Point, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019).

The Supreme Court and the Federal Circuit have provided some guideposts as to what constitutes an "abstract idea." For example, claims that recite ""method[s] of organizing human activity' are not patent-eligible because they are abstract ideas." *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 982 (Fed. Cir. 2017) (quoting *Alice*, 573 U.S. 208 at 220). "In the context of software-based inventions, *Alice* [] step one 'often turns on whether the claims focus on the specific

asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool.'" *Trinity*, 72 F.4th at 1362-63 (quoting *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022)). A "telltale sign of abstraction" is when the claimed functions are processes that "can be performed in the human mind, or by a human using a pen and paper." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316-17. Claims that are directed to a specific means or method for "improving technology" are not abstract, while those that are "simply directed to an abstract end-result" are. *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017). Creating "rules for playing a wagering game" is an abstract idea. *In re Smith*, 815 F.3d 816, 817 (Fed. Cir. 2016).

Claim 1 of the '735 patent, stripping out any language referring to a generic computer, requires "processing" a "real-world wager," "determining . . . the outcome of the real-world wager," having a "user interaction by the user with interactive media," "revealing" at least a portion of the outcome of the real-world wager to the user in a manner that "give[s] the appearance that the user won the revealed portion based on the user interaction" and "collecting . . . a fee." '735 patent at claim 1. These steps are purely abstract. They are directed to the rules of a wagering game, which is itself abstract. *In re Smith*, 815 F.3d at 817. The steps are directed to an "end-result" (the user thinking their wager is on interactive media, when it is actually on a real-world process). *RecogniCorp*, 855 F.3d at 1326. The steps are not directed to an improvement in technology, but an improvement in the process that is implemented on that technology. *Trinity*, 72 F.4th at 1362-63. The steps can be performed separately from the technological implementation—one could imagine a blackjack dealer stacking a deck[2] to reflect horse racing

---

[2] Decks are conventional and do not render the paper-and-pencil test inapposite. *In re Smith*, 815 F.3d at 819.

results, as a simple example. *PersonalWeb*, 8 F.4th at 1316-17. GPN contends that a "human with a stacked blackjack deck cannot account for uncertainties in gameplay—i.e. hitting or staying on the wrong card renders the 'stacked deck' useless." D.I. 21 at 12-13. Leaving aside that skilled human dealers could, e.g., deal someone a 21 on the first two cards and render this point moot,[3] that a computer can do a process more efficiently than a human does not render it patent eligible. *Trinity*, 72 F.4th at 1364. If the standard were that humans must do a process perfectly and without errors for it to be abstract, nearly all computer-implemented processes would be patent eligible.

The specification of the '735 patent confirms that its claims are directed to an abstract idea that merely seeks to use computers as a tool. The Abstract, Field of the Invention, and Summary of the Invention each state that the invention's methodology is "to give an appearance that the outcomes of the real-world wagers resulted from the user interactions even though the outcomes result from the real-world wagers and were determined before the user interactions." '835 patent at Abstract, 2:14-18, 2:45-48. This sort of broad, functional, results-oriented language is a telltale sign of abstraction. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016) ("[T]he essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101, especially in the area of using generic computer and network technology to carry out economic transactions."). The specification of the '735 patent does not require a specific type of computer. '735 patent at 5:45-48 ("The interactive game may be run on any platform such as a console, a computer, a mobile device, and/or other device"). GPN makes the incredible claim that the computer is "not a generic computer" because it must be "programmed with instructions that when executed cause the system to perform the

_____

[3] Or alter the rules to prevent hitting once above a certain sum, have a card up their sleeve for contingencies, intentionally bust in a two-player game, or any of the countless other methods to rig a game.

14

recited method." D.I. 21 at 8. This contention seems to misunderstand both Section 101 precedent and the very nature of a computer. *See Alice*, 573 U.S. at 215, 226 (rejecting an argument that a claim is patent eligible because the computer was "specifically programmed" and noting that "nearly every computer will include" hardware "capable of performing the basic calculation, storage, and transmission functions.").

GPN contends that the claims "implicate the Reveal Manager, which uses rules to determine how to reveal the portion in this way." D.I. 21 at 8. There are two problems with this contention. First, the claim language is primary, and the claim language does not require a specific method of revealing information, so long as it gives an appearance to the user. '735 patent at claim 1. Second, the mere use of a "distribution rule that determines when a condition is met" is an abstract idea. *Sanderling Mgmt. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023).

With respect to the '218 patent, GPN contends that the use of an "Unrevealed Account/balance is a specific technical feature that improves upon prior art systems." D.I. 21 at 9. Again, the claim language only requires "updating . . . an account balance," and does not require a specific technical implementation. '835 patent at claim 1. Moreover, even if the claims did require an unrevealed account balance, a computer tracking a user's account balance is a conventional idea. *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. App'x 1005, 1007 (Fed. Cir. 2014) (listing among abstract steps "tracking player payments"). GPN cannot plausibly plead that tracking a user's balance, and then revealing it to a user at a later time, is a non-abstract idea.

With respect to the '312 patent, GPN contends that the addition of a "reveal specification" with a "reveal parameter," containing rules on "how to reveal the outcome of the real-world wager" renders the patent non-abstract. '312 patent at claim 1, 44:19-32. The specification indicates that the "reveal parameter" is broadly defined, and "may include, for example, an amount of a value to

15

reveal (e.g., an amount of a user's payout(s) or loss(es) from real-world wagers to reveal), a timing of when to provide the reveal, and/or other reveal parameters that specify a reveal." '312 patent at 3:37-40. Merely using conventional rulesets is not enough to make an abstract idea patent-eligible. *Sanderling*, 65 F.4th at 703. Thus, at *Alice* step one, each of the Gambling Patents is directed to the abstract idea of pretend gambling on one game while in fact actually gambling on a different game.

The '252 patent is broader than the Gambling Patents. Stripped of generic computer language, the '252 patent claims "identifying . . . an item to be revealed" to a user, "selecting . . . the item," "selecting . . . the interactive media application . . . in which to reveal the item based on one or more parameters that specify a manner in which to reveal the item," "transmitting . . . information that specifies a reveal of the item to the interactive media application" and "receiving . . . information indicating whether the item was revealed through the interactive media application," and "updating . . . the user account balance based on the information received back from the interactive media application." '252 patent at claim 1. This is an extraordinarily broad claim, and even GPN rests its case for the patent eligibility of the '252 patent solely on the "wagering limitation" dependent claims that are "nearly identical" to the claims of the Gambling Patents. *See* D.I. 21 at 10. The wagering limitation dependent claims fail for the reasons set forth above, and the independent claim fails as directed to the abstract idea of giving an item to a user after presenting them media which reveals they are receiving an item.

GPN points to various Federal Circuit cases that it contends found similar claims eligible at *Alice* step one. *See* D.I. 21 at 11-13 (citing *Core Wireless Licensing v. LG Elecs.*, 880 F.3d 1356 (Fed. Cir. 2018) and *McRO, Inc v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016)); D.I. 26 (letter citing these as the most on-point step one cases).

16

In *Core Wireless*, the patents recited "improved interfaces [that] allow a user to more quickly access desired data stored in, and functions of applications included in, the electronic devices." 880 F.3d at 1359. GPN cites *Core Wireless* for the proposition that requiring a "limited set of data" which "restrain[ed] the type of data that can be displayed" and a "specific manner of displaying a limited set of information to the user" is inherently patent eligible. D.I. 21 at 11 (citing 880 F.3d at 1362). However, unlike the patents-in-suit, the patents in *Core Wireless* recited a technological improvement to a technological problem, rather than a business idea implemented on a computer. 880 F.3d at 1363 ("The disclosed invention improves the efficiency of using the electronic device . . . the claims are directed to an improvement in the functioning of computers."). Thus, *Core Wireless* is inapposite.

*McRO* is GPN's best case. *McRO* involved patents directed to automating rules sets for lip-synching animation. 837 F.3d at 1313. The Federal Circuit held that the use of an unconventional rule set, on a generic computer, distinguished the patents from the prior art human methods, because there was "no evidence that the process previously used . . . is the same as the process required by the claims. *Id.* at 1314. The Federal Circuit emphasized that the genus of rules improved the prior subjective process, rendering the claims patent-eligible. *Id.* at 1316.

This Court has previously noted that "the Federal Circuit has generally been hesitant to expand *McRO* beyond its facts." *Recentive*, 592 F. Supp. 3d at 454. *McRO* has been limited to cases where the patents-in-suit (1) are directed to the "creation of something physical," *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018); (2) "transformed a traditionally subjective process performed by human artists into a mathematically automated process executed on computers," *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016); and (3) are "limited to rules with specific characteristics and set out meaningful requirements," *Enco*

*Sys., Inc. v. DaVincia, LLC*, 845 F. App'x 953, 957 (Fed. Cir. 2021). None of those requirements is present here. Notably, GPN has not identified specific non-generic rules comparable to those in *McRO*—even incorporating the specifications, the rules recited are generic and lacking the specificity that elevated the claims in *McRO* to patent eligibility. *Compare* '312 patent at 5:41-45 (listing "date/time," "a game or other interactive media used to reveal the outcome," and "an amount of the outcome" as reveal parameters) *with McRO*, 837 F.3d at 1315 ("Claim 1 requires that the rules be rendered in a specific way: as a relationship between sub-sequences of phonemes, timing, and the weight to which each phoneme is expressed visually at a particular timing (as represented by the morph weight set)."). Thus, *McRO* does not save the patents-in-suit at *Alice* step one.

### ii. *Alice* Step 2

In *Alice* step two, the Court must consider the elements of the claim, both individually and as an ordered combination, to assess whether "the limitations present in the claims represent a patent-eligible application of the abstract idea." *Content Extraction*, 776 F.3d at 1347 (citation omitted). Merely reciting the use of a generic computer or adding the words "apply it with a computer" cannot convert a patent-ineligible abstract idea into a patent-eligible invention. *Alice*, 573 U.S. at 223; *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1332 (Fed. Cir. 2015). "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp*, 855 F.3d at 1327 (citation omitted).

GPN asserts that the inventive concept is "a specifically structured architecture of components, *e.g.* the specific interaction between user accounts/balances, the reveal determination, and the interactive media." D.I. 21 at 18. However, "the function performed by the computer at each step of the process is 'purely conventional.'" *Alice*, 573 U.S. at 225 (quoting *Mayo*

18

*Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 79 (2012)). "Using a computer to create and maintain 'shadow' accounts amounts to electronic recordkeeping—one of the most basic functions of a computer." *Id.* "The same is true with respect to the use of a computer to obtain data, adjust account balances, and issue automated instructions; all of these computer functions are 'well-understood, routine, conventional activit[ies]' previously known to the industry." *Id.* (quoting *Mayo* at 73).

GPN cites *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016) and *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091 (Fed. Cir. 2021) as its most favorable cases at *Alice* step two. D.I. 26. Neither helps GPN.

In *Amdocs*, the Federal Circuit held that claims describing changing the operation of a computer system by "allow[ing] data to reside close to the information sources, thereby reducing congestion in network bottlenecks" were patent-eligible at step two. 841 F.3d at 1292. The Federal Circuit noted that this "distributed architecture" "entails an unconventional technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows which previously required massive databases)." *Id.* at 1300.

Similarly, in *CosmoKey*, the Federal Circuit held that "improving computer or network security can constitute 'a non-abstract computer-functionality improvement' if done by a specific technique that departs from earlier approaches to solve a specific computer problem.'" 15 F.4th at 1099. In contrast, making games more interactive so users gamble more is not a technological problem, nor do the patents-in-suit present a unique technological solution.

Because the Court has found that the claims of the patents-in-suit are directed to abstract ideas, and that there is no inventive concept to save any of the claims at *Alice* step two, the claims

19

of the Gambling Patents and the '252 patent are directed to patent-ineligible subject matter. Thus, dismissal of the claims is warranted.

## E.   Dismissal is With Prejudice.

In the alternative, GPN requests that, if the Court is inclined to grant Defendants' Motion, GPN be granted leave to amend its Complaint. D.I. 21 at 20. "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). "The Third Circuit has adopted a liberal approach to the amendment of pleadings." *Id.* "In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving party." *Id.* (citations omitted). An amendment is futile if it "would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "The standard for assessing futility is the 'same standard for legal sufficiency as applies under [Federal] Rule [of Civil Procedure] Rule 12(b)(6).'" *Great W. Mining & Min. Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)).

When deciding a Rule 12(b)(6) motion, a court considers "documents that are attached to or submitted with the complaint." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation omitted). Here, GPN attached to its Complaint the patents-in-suit. D.I. 8, Exs. A-D. Thus, the Court reviewed the patents-in-suit when deciding Defendants' Motion. The claims of the patents say what they say, and GPN cannot, by pleading, overcome the disclosures of the specifications. *See, e.g.*, '735 patent at 2:44-58 (describing how the prior art includes interactive media and simulated wagers and describing the business problem of the "wagering process" being

"one dimensional" rather than a technological problem).   Amending the Complaint would not change the Court's § 101 analysis.  Thus, amendment of the Complaint by GPN would be futile.

Accordingly, the Court denies GPN's request for leave to amend its Complaint.

## IV.   CONCLUSION

For the above reasons, the Court grants Defendants' Motion to Dismiss, and denies GPN's request for leave to amend its Complaint.  The Court will enter an Order consistent with this Memorandum Opinion.